UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**BELFOR USA GROUP, INC.,**
      **Plaintiff,**

-vs-                                          Case No. 6:05-cv-1624-Orl-19UAM

**BRAY & GILLESPIE, LLC, a/k/a
Bray & Gillespie Management, LLC,
WESTCHESTER SURPLUS LINES
INSURANCE COMPANY, AXIS
REINSURANCE COMPANY,
WACHOVIA BANK, N.A.,**
      **Defendants.**

## ORDER

This case comes before the Court on the following:

1. Belfor USA Group, Inc.'s Motion for Partial Summary Judgment on the Issue of Liability as to its Claims Against Wachovia and Memorandum of Law in Support Thereof (Doc. No. 138, filed Nov. 1, 2007); and

2. Defendant Wachovia Bank, N.A.'s Opposition to Plaintiff Belfor USA Group's Motion for Partial Summary Judgment on the Issue of Liability as to Wachovia (Doc. No. 158, filed Nov. 30, 2008).

### Background

Plaintiff Belfor USA Group, Inc. ("Belfor") entered into a contract with Defendant Bray & Gillespie ("B&G") whereby Belfor agreed to repair nine of B&G's hotels that were damaged during hurricanes. (Doc. No. 1-2). Defendant Wachovia Bank, N.A. ("Wachovia") is the commercial real estate lender that held the mortgage on five of B&G's hotels. (Doc. No. 138-3, p. 9; Doc. No. 138-4, p. 12). After Belfor began repairing B&G's properties, B&G settled its claim for damages with its

insurers. (Doc. No. 138-12). B&G paid Wachovia the entire insurance settlement so that B&G could avoid defaulting on its mortgages. (Doc. No. 138-4, p. 7). Belfor has yet to be paid in full for the repair work it performed. (Doc. No. 138-9, pp. 6,7).

Belfor filed the underlying Complaint on October 28, 2005. (Doc. No. 1). Belfor argues that it is entitled to be paid the value of the work it performed out of the insurance payment Wachovia received. (*Id.*) Belfor asserts multiple causes of action against Wachovia. (*Id.*) Belfor now moves for partial summary judgment against Wachoiva on liability with respect to Count IV, Unjust Enrichment, and Count VII, Conversion. (Doc. No. 138). Wachovia opposes Belfor's Motion. (Doc. No. 158).

## **Standard of Review**

A party is entitled to summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is only appropriate when the evidence is such that a reasonable jury could not return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248. The moving party has the burden of proving that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

In determining whether the moving party has satisfied its burden, the court considers all inferences drawn from the underlying facts in the light most favorable to the party opposing the motion and resolves all reasonable doubts against the moving party. *Anderson*, 477 U.S. at 255. The court may not weigh conflicting evidence or weigh the credibility of the parties. *See Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913, 919 (11th Cir. 1993). If a reasonable fact finder could draw

more than one inference from the facts and that inference creates an issue of material fact, a court must not grant summary judgment. *Id.*

## Analysis

**I.      Belfor's Claim Against Wachovia for Unjust Enrichment**

Florida recognizes a cause of action for unjust enrichment when a plaintiff establishes that: (1) a benefit was conferred on the defendant; (2) the defendant either requested or knowingly and voluntarily accepted the benefit; (3) the benefit flowed to the defendant; and (4) that it would be inequitable for the defendant to retain the benefit without paying. *W.R. Townsend Contracting, Inc. v. Jensen Civil Const., Inc.*, 728 So.2d 297, 303 (Fla. 1st DCA 1999). Belfor contends that it has established all four elements. (Doc. No. 138).

Acceptance of a benefit is not enough to prevail on a claim for unjust enrichment because some benefit must flow to the defendant. *Gomes v. Stevens*, 548 So. 2d 1163, 1164-65 (Fla. 2d DCA 1989) (reversing summary judgment because although there was some evidence that owner knowingly and voluntarily allowed improvements to be made, the movant did not establish as a matter of law that a benefit flowed to the owner). A plaintiff who asserts an unjust enrichment claim against an owner for work performed on a tenant's property or against a mortgagee for work performed to a mortgagor's property cannot establish that a benefit flowed to the defendant solely because his work enhanced the value of the property. *E &M Marine Corp. v. First Union Nat'l Bank*, 783 So. 2d 311, 312-13 (Fla. 3d DCA 2001) (lender was not unjustly enriched by plaintiff's repairs to ship because lender did not request repairs, repairs were made before borrower's default gave lender a right to seek possession, and lender had no knowledge of ship's whereabouts until after the repairs were performed); *Coffee Pot Plaza P'ship v. Arrow Air Conditioning &*

*Refrigeration, Inc.*, 412 So.2d 883, 883-84 (Fla. 2d DCA 1982) (even though repairs to equipment in tenant's store increased the value of the equipment, owner was not unjustly enriched because owner did not gain possession of the equipment until it terminated the tenant's lease for failure to pay rent and because owner could not find a new tenant). Belfor's only argument with respect to its unjust enrichment claim is that Wachovia benefitted because the value of its collateral was enhanced by Belfor's work. (Doc. No. 138, p. 9). Because there is no basis to conclude that Wachovia had a right to possess B&G's properties, it is entirely speculative as to whether Wachovia received a benefit from Belfor's repair work. Therefore, Belfor has failed to establish that summary judgment is appropriate with respect to Count IV.

**II.     Belfor's Claim Against Wachovia for Conversion**

Under Florida law, "[c]onversion is an unauthorized act which deprives another of his property permanently or for an indefinite time." *Nat'l Union Fire Ins. Co. of Pa. v. Carib Aviation, Inc.*, 759 F.2d 873, 878 (11th Cir. 1985) (citations omitted). "The essence of the tort is not the acquisition of the property; rather, it is the wrongful deprivation." *Id.* Thus, in order to prevail on a claim for conversion of money, a plaintiff must prove by a preponderance of the evidence: (1) a specific and identifiable sum of money; (2) possession or an immediate right to possess that money; (3) an unauthorized act which deprives plaintiff of that money; and (4) a demand for return of the money and a refusal to do so. *E.g., United States v. Bailey*, 288 F. Supp.2d 1261, 1264 (M.D. Fla.2003).

Florida law recognizes tort claims for conversion of money provided that it consists of specific money capable of identification. *E.g., Belford Trucking Co. v. Zagar*, 243 So.2d 646, 648 (Fla. 4th DCA 1970). "[A] mere obligation to pay money, generally, may not be enforced by a

conversion action." *Douglas v. Braman Porsche Audi, Inc.*, 451 So. 2d 1038, 1039 (Fla. 3d DCA 1984); *see also Capital Bank v. G & J Invs. Corp.,* 468 So.2d 534, 535 (Fla. 3d DCA 1985) (contractual obligation to pay money generally does not support a conversion claim); *Belford Trucking Co.*, 243 So.2d at 648 (Fla. 4th DCA 1970) ("The requirement that the money be identified as a specific chattel does not permit as a subject of conversion an indebtedness which may be discharged by the payment of money generally. Therefore, where the parties have an open account, and the defendant is not required to pay the plaintiff identical moneys which he collected, there can be no action in tort for conversion." (citations omitted)). Thus, a party may not prevail on a cause of action for conversion by merely establishing a breach of contract to pay money. *Bel-Bel Int'l Corp. v. Cmty. Bank of Homestead*, 162 F.3d 1101, 1108 (11th Cir. 1998) (Conversion claim is not appropriate for "contractual rights to payments for which no particular source was specified. . . . "); *Douglas*, 451 So. 2d at 1039.

    Belfor's argument is insufficient to establish its entitlement to judgment as a matter of law on its conversion claim. Belfor has failed to establish its entitlement to a specific and identifiable sum of money because the contact between B&G and Belfor does not indicate that Belfor had the right to be paid directly out of the insurance proceeds. (Doc. No. 1-2). Rather, the contract merely indicates that Belfor had a right to be paid by B&G. (*Id.*) Although there is evidence that B&G attempted to arrange for Belfor to receive direct payment of the insurance proceeds, Belfor's right to direct payment was conditioned on the written consent of the "loss payees" of B&G's insurance policy. (*Id.* at pp. 2, 3).

    Specifically, B&G's contract with Belfor stated that B& G:

> agrees and covenants that they will promptly pay or cause payment for the insurance work in the event any Insurer . . . does not pay Contractor directly for all or any

> portion of the work for any reason whatsoever and B& G agrees to be liable for any payment prevented by a Loss Payee if B&G cannot obtain written consent of all lenders and Loss Payees (under the Policy) for the legal assignment direct payment to Belfor . . . .

(Doc. No. 1-2, p. 2). Moreover, the two contact provisions that Belfor cites in its summary judgment motion also require the written consent of the loss payees for Belfor to receive payment from B&G's insurers. (*See* Doc. No. 138, p. 4 (quoting Doc. No. 1-2, pp. 3). Section 2.10 of the contract provides in pertinent part:

> 2.10   <u>Legal Assignment of Insurance Proceeds for Work Performed</u>. B&G, acting as agent for Owners and with their consent and the consent of the Insurer's, **subject to the written consent of any loss payee or lender** hereby assigns all of their right, title and interest in and to those insurance policies and proceeds thereof as adjusted by their insurer for the work performed by Contractor to Belfor.

(Doc. No. 1-2, p. 3 (second emphasis added)). Section 2.11 provides in pertinent part:

> 2.11   <u>Direct Payment Authorization.</u> On behalf of its principals, B&G hereby authorizes and directs their insurers to pay Contractor directly as sole payee on all insurance loss drafts for the work performed by Contractor at the above Properties. BCA, on behalf of the Insurers, **subject to the written consent of any loss payee or lender**, consents to this direction which consent shall be confirmed in writing within five days of the execution of this Contract.

(*Id.* (second emphasis added)).

There is evidence in the record indicating that Wachovia was a loss payee. (Doc. No. 158-2, pp. 15, 19)). Belfor has failed to introduce any evidence of Wachovia's written consent to its direct payment. Therefore, Belfor has merely established its right to payment for the insurance repairs, not its right to direct payment from the insurance proceeds. Belfor's Motion for Partial Summary Judgment must be denied because Belfor has failed to establish the existence of a specific identifiable sum of money.

**Conclusion**

Based on the foregoing, the Court **DENIES** Belfor's Motion for Partial Summary Judgment on the Issue of Liability (Doc. No. 138).

**DONE** and **ORDERED** in Chambers in Orlando, Florida on December 17, 2007.

*/s/ Patricia C. Fawsett*
PATRICIA C. FAWSETT, CHIEF JUDGE
UNITED STATES DISTRICT COURT

Copies furnished to:

Counsel of Record