UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

BELFOR USA GROUP, INC.,

               Plaintiff,

-vs-                                       Case No.  6:05-cv-1624-Orl-19UAM

BRAY & GILLESPIE, LLC, a/k/a
Bray & Gillespie Management, LLC,
WESTCHESTER SURPLUS LINES
INSURANCE COMPANY, AXIS
REINSURANCE COMPANY,
WACHOVIA BANK, N.A.,

               Defendants.

_____

## ORDER

This case comes before the Court on the following:

1.       Wachovia Bank, N.A.'s Motion for Summary Judgment and Incorporated Memorandum of Law (Doc. No. 142, filed Nov. 1, 2007);

2.       Affidavit of Michael J. Lane, Esq. Filed in Support of Wachovia Bank, N.A.'s Motion for Summary Judgment (Doc. No. 143, filed Nov. 1, 2007)[1]; and

3.       Belfor USA Group, Inc.'s Memorandum of Law in Opposition to Wachovia's Motion for Summary Judgment (Doc. No. 159, filed Dec. 3, 2007).

### Background

Plaintiff Belfor USA Group, Inc. ("Belfor") entered into a contract with Defendant Bray & Gillespie ("B&G") whereby Belfor agreed to repair nine of B&G's hotels that were damaged during

---

[1]     The documents attached to Wachovia Bank, N.A.'s Motion for Summary Judgment will be cited according to Wachovia's exhibit numbers as follows "Ex. __, p. __." (Doc. No. 143). The pages within each deposition will be cited by their deposition page number.  The pages within each other document will be cited by their actual page number within the exhibit.

hurricanes.  (Doc. No. 1-2).  At the time of the incidents, B&G's mortgagee, Column Financial, Inc.,

had assigned the mortgage to Wells Fargo Bank.  (Ex. 15).  Wells Fargo held the B&G mortgage

in trust.  (*Id.*)  Defendant Wachovia Bank, N.A. ("Wachovia")  served as agent and servicer to the

trust and was required to act in its best interests.  (Ex. 4, pp. 31, 42-43, 236).  After Belfor began

repairing B&G's properties, B&G settled its claim for damages with its insurers.  (Ex. 16).  B&G

paid Wachovia the entire insurance settlement so that B&G could avoid defaulting on its mortgages.

(Ex. 10, p. 21).  Belfor has yet to be paid in full for the repair work it performed.  (Ex. 5, p. 43).

Belfor filed the underlying Complaint on October 28, 2005.  (Doc. No. 1).  Belfor argues that

it is entitled to be paid the value of the work it performed out of the insurance payment Wachovia

received.  (*Id.*)  Belfor asserts the following causes of action against Wachovia: (1) declaratory

judgment; (2) unjust enrichment; (3) tortious interference with contractual relations; (4) quantum

meruit/constructive trust; and (5) conversion.  (*Id.*)  Wachovia moves for summary judgment on all

five counts and makes two categories of arguments.  (Doc. No. 142).  First, Wachovia argues that

Belfor has no right to recover because there was no valid assignment of the insurance proceeds to

Belfor.  (*See id.*)  Second, Wachovia argues that Belfor cannot prove all of the required elements to

prevail on each of its five causes of action.  (*See id.*)  Belfor opposes Wachovia's motion.  (Doc. No.

159).

## Standard of Review

A party is entitled to summary judgment "if the pleadings, the discovery and disclosure

materials on file, and any affidavits show that there is no genuine issue as to any material fact and

that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *accord Anderson*

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Summary judgment is only appropriate when the

evidence is such that a reasonable jury could not return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248. The moving party has the burden of proving that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party properly makes and supports its motion, the nonmoving party "may not rely on allegations or denials in its own pleading" and must "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2).

In determining whether the moving party has satisfied its burden, the court considers all inferences drawn from the underlying facts in the light most favorable to the party opposing the motion and resolves all reasonable doubts against the moving party. *Anderson*, 477 U.S. at 255. The court may not weigh conflicting evidence or weigh the credibility of the parties. *See Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913, 919 (11th Cir. 1993). If a reasonable fact finder could draw more than one inference from the facts and that inference creates an issue of material fact, a court must not grant summary judgment. *Id.*

## Analysis

### I.     Validity of the Assignment

Belfor's Complaint asserts that B&G assigned to Belfor the interest in its insurance proceeds pursuant to the repair contract. (Doc. No. 1; Ex. 3). Counts I, V and VII, Belfor's claims for declaratory judgment, tortious interference and conversion, are inextricably linked with Belfor's contention that a valid assignment existed, because each Count is premised on Belfor's argument that it had contractual right to the insurance proceeds. (*See* Doc. No. 1).

"An assignment is a transfer of all the interests and rights to the thing assigned." *Price v. RLI Ins. Co.*, 914 So.2d 1010, 1013 (Fla. 5th DCA 2005). A creditor on an account may assign the

right to receive payment on that account.  *Boulevard Nat. Bank of Miami v. Air Metal Indus., Inc.*,

176 So. 2d 94, 97 (Fla. 1965).  Such assignment may be accomplished in a variety of ways as long

as the  method "demonstrate[s] an intent to transfer and an acceptance of it."  *Id.* at 98.  Under

Florida law, an insured may assign its interest in insurance proceeds to a third party after a loss

irrespective of the fact that the insurance policy contains a nonassignment clause.  *Better Const., Inc.*

*v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 651 So. 2d 141, 142 (Fla. 3d DCA 1995) (per curiam).

There is no evidence in the record to support finding that B&G assigned its rights to the

insurance proceeds to Belfor.  Although the repair contract and direct payment authorizations

indicate that B&G attempted to grant Belfor a right to receive payment out of the insurance

proceeds, a valid assignment was never created because Belfor's right to payment out of the

insurance proceeds was always conditioned on the written consent of its loss payees, such as

Wachovia.

Specifically, B&G's contract with Belfor states that B&G:

> agrees and covenants that they will promptly pay or cause payment for the insurance
> work in the event any Insurer . . . does not pay Contractor directly for all or any
> portion of the work for any reason whatsoever and B& G agrees to be liable for any
> payment prevented by a Loss Payee if B&G cannot obtain written consent of all
> lenders and Loss Payees (under the Policy) for the legal assignment direct payment
> to Belfor . . . .

(Doc. No. 1-2, p. 2).  Moreover, Article 2 of the contract provides in pertinent part:

> 2.10   Legal Assignment of Insurance Proceeds for Work Performed. B&G, acting
> as agent for Owners and with their consent and the consent of the Insurer's,
> **subject to the written consent of any loss payee or lender** hereby assigns
> all of their right, title and interest in and to those insurance policies and
> proceeds thereof as adjusted by their insurer for the work performed by
> Contractor to Belfor.
>
> 2.11   Direct Payment Authorization. On behalf of its principals, B&G hereby
> authorizes and directs their insurers to pay Contractor directly as sole payee

> on all insurance loss drafts for the work performed by Contractor at the above
> Properties. BCA, on behalf of the Insurers, **subject to the written consent**
> **of any loss payee or lender**, consents to this direction which consent shall
> be confirmed in writing within five days of the execution of this Contract.

(*Id.* at p. 3 (bold emphasis added)).  The evidence establishes that Wachovia was a loss payee and, therefore, was required to consent to the assignment or direct payment of the insurance funds.  (*E.g.,* Ex. 4, p. 114).  Additionally, the direct payment authorizations that B&G executed in accordance with Section 2.11 of the contract indicate that Belfor's right to direct payment out of the insurance proceeds was "subject to and conditioned upon written approval and authorization of Wachovia Bank, N.A., and the requirements for disbursement set forth in the Contract. . . ."  (Ex. 6).

Wachovia has produced evidence indicating that it never consented to the direct payment or assignment of the insurance proceeds to Belfor (Ex. 5, p. 146; Ex. 10, p. 47; Ex. 11, p. 19).  Belfor fails to introduce any evidence of Wachovia's consent.

Because the language of the contract states that Belfor's right to payment was "subject to" Wachovia's written consent, Wachovia's written consent was a condition precedent to Belfor's right to  receive payment from the insurance proceeds.  *See In re Estate of Boyar*, 592 So. 2d 341, 343 (Fla. 4th DCA 1982) ("such terms as 'if', 'provided that', 'on condition that', or some other phrase that conditions performance, usually connote an intent for a condition. . . . ); *Windowmaster Corp. v. Jefferson Const. Co.*, 114 So. 2d 626, 628 (Fla. 3d DCA 1959) (An agreement which is "subject to" the consent of a third party is conditional and "[l]iability will arise under such a contract only when the condition has been met, that is when the third party has performed the condition which is made the predicate for liability on the contract.") .  A condition precedent is "[a]n act or event, other than a lapse of time, that must exist or occur before a duty to perform something promised arises." Black's Law Dictionary (8th ed. 2004).  There is no duty to perform until a condition precedent is

fulfilled. *E.g., S. Internet Sys, Inc. ex rel. Menotte v. Pritula*, 856 So.2d 1125, 1128 (Fla. 4th DCA 2003). The language of the contract and direct pay authorizations specify that Belfor's right to payment was "subject to" Wachovia's written consent. (Doc. No. 1-2). Without evidence of Wachovia's consent, a valid legal assignment of the insurance proceeds did not occur.[2]

When a motion for summary judgment is made and supported, the nonmoving party must come forward with evidence indicating the existence of a genuine issue of material fact. Fed. R. Civ. P. 56(e). Belfor's submission fails to include evidentiary support for its contention that it had a right to receive the insurance proceeds. (*See* Doc. No. 159). The Court has attempted to locate evidence to support Belfor's alleged right to receive the insurance proceeds. However, "a district court need not scour the record to determine whether there exists a genuine issue of fact to preclude summary judgment. Instead, the court can rely upon the non-moving party to show such a dispute if one exists." *L.S. Heath & Son, Inc. v. AT & T Info. Sys. Inc.*, 9 F.3d 561, 567 (7th Cir. 1993); *see also Impreglon, Inc. v. Newco Enters., Inc.*, 508 F. Supp. 2d 1222, 1241 n. 16 (N.D. Ga. 2007); *Tomasini v. Mount Sinai Med. Ctr. of Fla., Inc.* 315 F. Supp.2d 1252, 1260 n. 11 (S.D. Fla. 2004); *BFI Waste Sys. of. N. Am. v. DeKalb County, Ga.*, 303 F. Supp. 2d 1335, 1342 n. 5 (N.D. Ga. 2004). Belfor has failed to carry its burden of showing that a genuine issue of material fact exists with respect to its right to receive the insurance proceeds.

---

[2]     The state of Florida also recognizes equitable assignments. *E.g., Giles v. Sun Bank, N.A.*, 450 So. 2d 258, 260 (5th DCA 1984). An equitable assignment may be accomplished in a variety of different ways provided that there is evidence of a intent by one side to assign, an intent by the other to receive, and consideration. *Id.* However, such a present intent to assign is not apparent in the instant case because all of B&G's promises to assign the proceeds to Belfor were conditioned on Wachovia's consent. Thus, Belfor has failed to introduce evidence that there is an equitable basis for holding that an assignment occurred.

### A.      Belfor's Claim for Declaratory Judgment Against Wachovia

Count I of Belfor's Complaint seeks a declaratory judgment that "the legal assignment and direct pay provisions contained in the Contract, specifically Paragraphs 2.10 and 2.11, are valid and binding on Defendants;" and directing Wachovia to interplead the insurance proceeds so that the Court can adjudicate Belfor's rights.  (Doc. No. 1, p. 8).  A declaratory judgment is only proper when "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941).  Because Belfor has failed to introduce evidence supporting its contention that either the legal assignment or direct pay provisions in the contract are valid and binding on Wachovia, it has failed to show evidence that a declaratory judgment would be proper.  Thus, Wachovia's Motion for Summary Judgment must be granted with respect to Count I.

### B.      Belfor's Tortious Interference with Contractual Relations Claim Against Wachovia

In order to prevail on a claim for tortious interference, a plaintiff must establish: (1) the existence of a business relationship, not necessarily evidenced by an enforceable contract; (2) defendant knew of the relationship; (3) defendant intentionally and unjustifiedly interfered with the relationship; and (4) plaintiff suffered damages as a result of the breach of the relationship. *Tamiami Trail Tours, Inc. v. Cotton*, 463 So.2d 1126, 1127 (Fla. 1985).  Florida law requires evidence of direct interference and does not recognize a cause of action for "interference which is only negligently or consequentially effected." *Ethyl Corp. v. Balter*, 386 So. 2d 1220, 1224 (Fla. 3d DCA 1980), *petition for rev. denied*, 392 So. 2d 1371 (Fla. 1981), *cert. denied*, 452 U.S. 955 (1981).

Moreover, "there is no cause of action for tortious interference when a contract provision expressly reserved the right to interfere." *McCurdy v. Collis,* 508 So.2d 380, 383 (Fla. 1st DCA 1987) (citing *Fla. Tel. Corp. v. Essig*, 468 So. 2d 543, 544 (Fla. 5th DCA 1985). Even if interference occurs, Florida law creates a privilege to interfere whereby "activities taken to safeguard or promote one's own financial, and contractual interests are entirely non-actionable" unless improper means are employed. *Ethyl* Corp., 386 So. 2d at 1225; *see also McCurdy,* 508 So.2d at 383 (reasoning that there is a qualified privilege to protect one's own business interest and finding that interference to protect that interest is only actionable when "malice is the sole basis for interference . . . ."). This qualified privilege allows a mortgagee "to take steps fairly designed to insure that his debt would be paid." *Wagner v. Nottingham Assoc.*, 464 So. 2d 166, 168 (Fla. 3d DCA 1985); *see also Nitzberg v. Zalesky*, 370 So. 2d 389, 392 (Fla. 3d DCA 1979) (mortgagee is privileged to interfere with borrower's contracts to protect financial interest), *receded from on other grounds by Ethyl Corp. v. Balter*, 386 So. 2d 1220 (Fla. 3d DCA 1980).

Wachovia contends that its interference was justified and it cannot be liable for tortiously interfering with Belfor's contract because: (1) Belfor's contractual right to direct payment was conditioned on Wachovia's consent; and (2) Wachovia accepted the payment from B&G so that it could protect its own assets. (*See* Doc. No. 142, p. 22). Belfor contends that it has established that genuine issues of material fact exist with respect to its tortious interference claim because "Whether Wachovia's actions were justified is an issue for the trier of fact." (Doc. No. 159, p. 11). Belfor argues that issues of fact exist because: (1) the mortgage documents govern who is entitled to the insurance proceeds and require Wachovia to hold the monies for payment to the contractors; (2) Wachovia was aware that B&G had a contract with Belfor to repair hotels in which Wachovia had

no interest; and (3) Wachovia knew that some of the insurance funds pertained to the properties in which Wachovia had no interest.  (*Id.* at p. 12).

Belfor does not cite the specific section of the mortgage documents to which it refers, and the Court is unable to locate such a provision in the documents.  Additionally, the only testimony that Belfor cites does not support its argument that it was entitled to any of the insurance proceeds Wachovia received from B&G.  (Ex. 11, p. 19-20 (testimony by Belfor's Chief Financial Officer that Wachovia opposed an assignment of the insurance proceeds but promised to turn over all insurance checks it received to which Belfor was entitled).  Although there is evidence in the record that Wachovia knew the insurance money covered B&G's claims with respect to hotels in which it did not have an interest, no evidence supporting Belfor's argument that it was entitled to the insurance proceeds has been identified.  (*E.g.,* Ex.  16, p. 29 (Wachovia signed B&G's settlement agreement with its insurers); Ex. 4, p. 136-37, 145 (testimony by Wachovia's Portfolio Manager for B&G that Wachovia was not required to ensure Belfor was paid and was entitled to all of the insurance proceeds).  As previously found, Belfor has failed to establish a contractual right to be paid out of the insurance proceeds.  *Supra - Analysis Part I.*   Thus, Belfor has failed to meet its burden of introducing evidence that it had a business relationship which entitled it to payment from the insurance proceeds.

The question of privilege to interfere can be decided as a matter of law.  *E.g., Int'l Sales & Serv., Inc. v. Austral Insulated Prods., Inc.*, 262 F.3d 1152, 1160 (11th Cir. 2001) (affirming district court's decision finding actions privileged as a matter of law); *Ethyl Corp.*, 386 So. 2d at 1224. Belfor's contentions that there are genuine issues of material fact are without merit.  Wachovia has introduced uncontroverted evidence that B&G paid it the settlement proceeds so that B&G could

avoid foreclosure. (*E.g.*, Ex. 7, pp. 82, 185; Ex. 10, pp. 19-21). The hurricanes hurt B&G's financial situation because they damaged B&G's property and forced it to shut down some of its hotels. (*E.g.,* Ex. 17, pp. 46, 48). B&G settled its insurance claims for $63 million so that it could pay off the pre-existing debts on its properties and avoid default. (Ex. 10, pp. 19-21). At the time B&G settled with its insurance carriers, it needed approximately $68 million dollars to pay off its mortgage. (Ex. 4, p. 176). Wachovia accepted a $63 million dollar payment from B&G and allowed B&G to take out a new loan which had the same effect as allowing B&G to refinance its mortgage. (*Id.* at pp. 176-77). Provided that improper means are not used, a mortgagee's decision to accept partial payment and refinance an existing loan rather than foreclose on damaged property can be categorized as an action to protect its own interest and the value of its investment. *Cf. Ethyl Corp.*, 386 So. 2d 1222-25 (creditor corporation which acquired all of debtor corporation's stock in exchange for paying off debtor corporation's loan was privileged to solicit offers to reorganize debtor corporation so that debtor corporation could pay back money creditor corporation was originally owed). Accordingly, Wachovia's mere knowledge of Belfor's contractual right to payment fails to indicate that Wachovia intentionally or unjustifiably interfered with Belfor's business relationship with B&G. In the absence of evidence indicating Wachovia's interference was unjustified, Wachovia's Motion for Summary Judgment must be granted with respect to Count V.

### C.     Belfor's Claim for Conversion Against Wachovia

Belfor's claim for conversion cannot withstand summary judgment absent proof of a valid assignment. Under Florida law, "[c]onversion is an unauthorized act which deprives another of his property permanently or for an indefinite time." *Nat'l Union Fire Ins. Co. of Pa. v. Carib Aviation, Inc.*, 759 F.2d 873, 878 (11th Cir. 1985) (internal quotations omitted). "The essence of the tort is

not the acquisition of the property; rather, it is the wrongful deprivation." *Id.*  Thus, in order to prevail on a claim for conversion of money, a plaintiff must prove by a preponderance of the evidence: (1) a specific and identifiable sum of money; (2) possession or an immediate right to possess that money; (3) an unauthorized act which deprives plaintiff of that money; and (4) a demand for return of the money and a refusal to do so. *E.g., United States v. Bailey*, 288 F. Supp.2d 1261, 1264 (M.D. Fla. 2003).

Florida law recognizes tort claims for conversion of money provided that the claim is for a specific money capable of identification.  *E.g., Belford Trucking Co. v. Zagar*, 243 So.2d 646, 648 (Fla. 4th DCA 1970). "[A] mere obligation to pay money, generally, may not be enforced by a conversion action." *Douglas v. Braman Porsche Audi, Inc.*, 451 So. 2d 1038, 1039 (Fla. 3d DCA 1984); *see also Capital Bank v. G & J Invs. Corp.,* 468 So.2d 534, 535 (Fla. 3d DCA 1985) (contractual obligation to pay money generally does not support a conversion claim); *Belford Trucking Co.*, 243 So.2d at 648 (Fla. 4th DCA 1970) ("The requirement that the money be identified as a specific chattel does not permit as a subject of conversion an indebtedness which may be discharged by the payment of money generally. Therefore, where the parties have an open account, and the defendant is not required to pay the plaintiff identical moneys which he collected, there can be no action in tort for conversion." (citations omitted)).  Thus, a party may not prevail on a cause of action for conversion by merely establishing a breach of contract to pay money.  *Bel-Bel Int'l Corp. v. Cmty. Bank of Homestead*, 162 F.3d 1101, 1108 (11th Cir. 1998) (Conversion claim is not appropriate for "contractual rights to payments for which no particular source was specified. . . ."); *Douglas*, 451 So. 2d at 1039.

Belfor's entire argument in response to Wachovia's motion for summary judgment on the conversion claim is that some of the insurance proceeds related to properties in which Wachovia had no interest. (Doc. No. 159, pp. 12-13). Belfor contends that, "by exercising control over funds in which it had no interest, and which had already been pledged to Belfor and therefore belonged to Belfor, Wachovia converted specifically identifiable Belfor funds." (*Id.* at p. 13).

As discussed in the Court's previous Order denying Belfor's Motion for Partial Summary Judgment on its conversion claim, Belfor has presented no evidence supporting its entitlement to be paid out of the insurance proceeds. (*See* Doc. No. 166, pp. 4-5). The contact between B&G and Belfor does not indicate that Belfor had the right to be paid directly out of the insurance proceeds. (Doc. No. 1-2). Rather, the contract merely indicates that Belfor had a right to be paid by B&G. (*Id.*) Thus, there is no evidence indicating Belfor's entitlement to a specific sum of money. Consequently, Wachovia's Motion for Summary Judgment is granted with respect to Count VII.

## II.   Belfor's Equitable Claims for Unjust Enrichment and Quantum Meruit

Count IV of Belfor's Complaint asserts a claim for unjust enrichment and alleges that:

> By receiving the Insurance Proceeds in contravention of the Contract, including the assignment of insurance policies and proceeds and direct pay obligation to Belfor, and applying the Insurance Proceeds to the debt owed to Wachovia instead of paying Belfor for its work performed at the Hotels, Wachovia has been unjustly enriched and Belfor has been damaged thereby.

(Doc. No. 1, ¶ 51). Count VI of Belfor's Complaint asserts a cause of action for quantum meruit and seeks the imposition of a constructive trust on Wachovia's interest in the hotels. (*Id.* at ¶¶ 58-64). Belfor contends that allowing Wachovia to retain the benefit of its repairs without paying for Belfor's services would be inequitable. (*Id.*) Thus, both Counts assert a claim for quasi contract and

argue that allowing Wachovia to retain the benefit of Belfor's work would be unjust.[3]   *See Commerce P'ship 8098 Ltd. Partnership v. Equity Contracting Co.,* 695 So.2d 383, 386 (Fla. 4th DCA 1997) (defining quasi contract as "a legal fiction . . . adopted to provide a remedy where one party was unjustly enriched" and stating that causes of action based on contracts implied in law encompass claims for both quantum meruit and unjust enrichment).

In order to prevail on a claim for unjust enrichment or quantum meruit under Florida law, a plaintiff must prove that: (1) it conferred a benefit on the defendant; (2) the defendant either requested or knowingly and voluntarily accepted the benefit; (3) the benefit flowed to the defendant; and (4) it would be inequitable for the defendant to retain the benefit without paying the plaintiff. *W.R. Townsend Contracting, Inc. v. Jensen Civil Const., Inc.*, 728 So.2d 297, 303 (Fla. 1st DCA1999); *see also Commerce P'ship 8098 Ltd. Partnership*, 695 So. 2d at 386.  In order to prevail on an unjust enrichment claim, a plaintiff must show that he "directly conferred a benefit on the defendant[]." *Am. Safety Ins. Serv. v. Griggs*, 959 So. 2d 322, 331 (Fla. 5th DCA 2007). Improvements to a property in which a defendant has a security interest are not considered direct benefits unless the defendant has a present right to possess the property.[4]  *E &M Marine Corp. v. First Union Nat'l Bank*, 783 So. 2d 311, 312-13 (Fla. 3d DCA 2001) (defendant lender did not knowingly and voluntarily accept the benefit of plaintiff's repairs because it did not come into

---

[3]    Both Wachovia's Motion for Summary Judgment and Belfor's Response analyze Counts IV and VI together under the theory of unjust enrichment. (Doc. No. 142, pp. 19-21, Doc. No. 159, pp. 9-11)

[4]    Florida case law suggests that a benefit is not directly conferred on the security interest holder unless and until the security interest holder acquires possession. *E &M Marine Corp. v. First Union Nat'l Bank*, 783 So. 2d 311, 312-13 (Fla. 3d DCA 2001); *Coffee Pot Plaza P'ship v. Arrow Air Conditioning & Refrigeration, Inc*., 412 So.2d 883, 883-84 (Fla. 2d DCA 1982).

possession of the property until after the repairs were made); *Coffee Pot Plaza P'ship v. Arrow Air Conditioning & Refrigeration, Inc.*, 412 So.2d 883, 883-84 (Fla. 2d DCA 1982) (defendant lessor did not knowingly and voluntarily accept the benefit of improvements to tenant's property because defendant did not come into possession of the property until the improvements were complete and it forcibly terminated tenant's lease).

Wachovia contends that it is entitled to summary judgment because it did not derive any benefit from Belfor's repairs.  (Doc. No. 142, p. 20).  Under Florida law, a mortgage is considered a "lien on the property . . . and not a conveyance of the legal title or of the right of possession."  Fla. Stat. § 697.02.  Therefore, a mortgagee has no right to possess the property before foreclosure. *E.g., Folks v. Chesser*, 145 So. 602, 603 (Fla. 1933).  Wells Fargo held the mortgage on B&G's properties in trust.  (Ex. 15).  Wachovia acted as the agent and servicer to the trust and was bound to act in the trust's best interest.  (Ex. 4, pp. 31, 42-43, 87, 236).  Wachovia accepted the insurance proceeds and allowed B&G to refinance its loan in order for B&G to avoid foreclosure and repay the money owed to the trust.  (Ex. 4, pp. 176-77, 236). Wachovia had no right take possession of the B&G properties because it never declared B&G in default or attempted to foreclose on the loan.  (Ex. 4, p. 252-53).

Belfor's entire argument against Wachovia's Motion for Summary Judgment on its unjust enrichment claim is that its repairs increased the value of Wachovia's collateral and Wachovia accepted the benefit of the repairs as well as the insurance proceeds without paying Belfor.  (Doc. No. 159, p. 9).  However, Belfor fails to introduce any support for its argument.  Florida law does not recognize the mere increase in the value of collateral as a direct benefit in claims for unjust enrichment unless the defendant has a present right to possess the collateral.  *See E &M Marine Corp. v. First Union Nat'l Bank*, 783 So. 2d 311, 312-13 (Fla. 3d DCA 2001); *Coffee Pot Plaza*

-14-

*P'ship v. Arrow Air Conditioning & Refrigeration, Inc.*, 412 So.2d 883, 883-84 (Fla. 2d DCA 1982).

Because Belfor has failed to introduce evidence of a direct benefit to Wachovia, there is no basis for

finding unjust enrichment.  Accordingly,  Wachovia is entitled to summary judgment on Count IV

and VI.

### Conclusion

The Court **GRANTS** Defendant Wachovia Bank N.A.'s Motion for Summary Judgment

(Doc. No. 142) with respect to Counts I, IV, V, VI, VII.  The Clerk of Court is directed to enter

**JUDGMENT FOR DEFENDANT WACHOVIA** on the aforementioned counts and dismiss it

from the case.

**DONE** and **ORDERED** in Chambers in Orlando, Florida on January 31, 2008.

PATRICIA C. FAWSETT, CHIEF JUDGE
UNITED STATES DISTRICT COURT

Copies furnished to:

Counsel of Record